UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NASARIA MARIN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| COMPASS GROUP USA, INC. AND | ) |
| EUREST SERVICES, INC. D/B/A | ) |
| EVERSOURCE FM | ) |
| | ) |
| Defendants. | ) |
| | ) |

CIVIL ACTION NUMBER:

_____

JURY TRIAL DEMANDED

## COMPLAINT AND JURY DEMAND

### PARTIES

1.      The Plaintiff, Nasaria Marin ("Ms. Marin" or the "Plaintiff"), is a female resident of the State of New York residing at 3430 3rd Avenue Apartment 3A, Bronx, NY 10456.

2.      Defendant Compass Group USA, Inc. ("Compass Group") is a for-profit corporation doing business in the state of New York.  Compass Group is registered with the New York Secretary of State as a foreign corporation doing business in New York. Compass Group is incorporated in Delaware, and its principal office is located at 2400 Yorkmont Road, Charlotte, NC 28217.

3.      Defendant Eurest Services, Inc. d/b/a Eversource FM ("Eversource") (Compass Group and Eversource, individually and collectively, the "Company" or "Defendants") is a for-profit corporation doing business in the state of New York.  Eversource is registered with the New York Secretary of State as a foreign corporation doing business in New York. Eversource is incorporated in Delaware, and its principal office is located at 2400 Yorkmont Road, Charlotte, NC 28217.

**JURISDICTION AND VENUE**

4.     This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 because Plaintiff has brought claims pursuant to Title VII of the Civil Rights Act ("Title VII"), the Americans with Disabilities Act (the "ADA"), the Family and Medical Leave Act ("FMLA"), and the Pregnancy Discrimination Act ("PDA"). The court may exercise supplemental jurisdiction over Plaintiff's state and city law claims. 28 U.S.C. §1367.

5.     This court has personal jurisdiction over Compass Group because Compass Group has engaged in and transacted business in the State of New York, including by managing and/or operating a business in New York and/or employing the Plaintiff in New York, and Plaintiff's causes of action stem largely from Compass Group's business transactions within the State of New York. Indeed, the Plaintiff was employed by Compass Group at 347 10th Avenue, New York, NY 10001 in the State of New York, was managed and supervised by Compass Group in the State of New York, was discriminated against by Compass Group in the State of New York, and was terminated by the Compass Group in the State of New York.

6.     This court has personal jurisdiction over Eversource because Eversource has engaged in and transacted business in the State of New York, including by managing and/or operating a business in New York and/or employing the Plaintiff in New York, and Plaintiff's causes of action stem largely from Eversource's business transactions within the State of New York. Indeed, the Plaintiff was employed by Eversource at 347 10th Avenue, New York, NY 10001 in the State of New York, was managed and supervised by Eversource in the State of New York, was discriminated against by Eversource in the State of New York, and was terminated by the Defendants in the State of New York.

7.      Venue is appropriate in the Southern District of New York as Defendants' acts and omissions giving rise to the claims in this Complaint occurred in the Southern District of New York. Indeed, Ms. Marin worked for the Defendants, and was fired by the Defendants in Manhattan within New York, New York, which is within the Southern District of New York.

## STATEMENT OF FACTS

8.      Ms. Marin is a woman.

9.      On or around December 5, 2022, Ms. Marin began employment for the Company as a front desk receptionist in the Company's Manhattan facility within New York, New York.

10.      At all relevant times, the Company (including each of Compass Group and Eversource) employed 15 or more employees for 20 or more weeks during the preceding calendar year.

11.      Accordingly, at all relevant times, the Company (including each of Compass Group and Eversource) was an employer under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act, the New York State Human Rights law ("NYHRL"), and the New York City Human Rights Law ("NYCHRL").

12.      At all relevant times, the Company (including each of Compass Group and Eversource individually, as well as collectively) was an entity engaged in interstate commerce and employed 50 or more employees for each working day during 20 or more weeks during the relevant calendar years.

13.      Accordingly, at all relevant times, the Company was an employer under the Family and Medical Leave Act ("FMLA") and the New York Paid Family Leave Law ("NY PFL").

14.      At all relevant times, Ms. Marin was paid by Eversource.

15. Additionally, at all relevant times Eversource met the standard of being a joint employer under applicable tests, such as defined pursuant to the FMLA, including because they had common management, interrelated operations, centralized control of labor relations, and common ownership or financial control.

16. For example, at all relevant times, Ms. Marin applied for medical leave through Eversource. Additionally, upon information and belief, Ms. Marin was hired and terminated at the direction of an Eversource employee.

17. At all relevant times, the Company employed 100 or more employees. Indeed, at all relevant times, the Company employed more than 501 employees.

18. At all relevant times, Ms. Marin was a qualified employee, and her performance was satisfactory.

19. Upon Ms. Marin's hiring, her supervisor was Tracy Robinson ("Robinson"), payroll manager.

20. Upon information and belief, during the period of Ms. Marin's employment, Robinson was not pregnant nor had recently been pregnant, was not disabled, was not regarded by the Company as disabled, did not request or utilize reasonable accommodations regarding disabilities, and did not utilize leave protected under the FMLA and/or NYPFL.

21. At all relevant times, Ms. Marin performed her job satisfactorily.

22. In or around September 2023, Ms. Marin discovered she was pregnant, with a due date of on or around June 13, 2024.

23. In or around mid-October 2023 Ms. Marin disclosed her pregnancy, as well as her due date, to Robinson and another of her managers at the Company named Jake Uim ("Uim").

24.      Uim is a man who, upon information and belief, during the period of Ms. Marin's employment, was not regarded by the Company as disabled, did not request or utilize reasonable accommodations regarding disabilities, and did not utilize protected leave under the FMLA and/or NYPFL.

25.      Notably, at all relevant times, Uim had supervisory authority over Ms. Marin.

26.      Robinson and Uim both seemed surprised and annoyed by Ms. Marin's pregnancy disclosure.

27.      For example, Robinson muttered, "Oh" in a disgruntled tone upon hearing Ms. Marin's disclosure.

28.      Ms. Marin also requested the reasonable pregnancy-related accommodation of taking around one (1) hour off on a monthly basis for prenatal appointments and a continuous leave from in or around June 2024 to in or around early September 2024 to give birth, recuperate, and engage in baby bonding.

29.      Notably, at all relevant times, the Company employed 50 or more employees within a 75- mile radius of where Ms. Marin worked.

30.      Furthermore, as of December 5, 2023 and at all relevant times thereafter, Ms. Marin been an employee for at least 12 months and had worked in excess of 1250 hours during the preceding 12-month period.

31.      As such, as of December 5, 2023 and at all relevant times thereafter, Ms. Marin was an eligible employee for FMLA leave.

32.      Giving birth served, recovering from birth, and baby bonding all serve as legitimate bases for protected leave for FMLA.

33.     As such, Ms. Marin was an eligible employee entitled to leave protected under the FMLA, as well as state and federal law.

34.     Additionally, Ms. Marin had been employed by the Company for at least 26 weeks and had worked in excess of 20 hours per week. As such, Ms. Marin was an eligible employee for leave protected under the NY PFL.

35.     As such, Ms. Marin was entitled to up to 12 weeks of leave to engage in baby bonding, which was a qualifying reason for the NY PFL.

36.     Therefore, Ms. Marin's request for leave was also protected under the NY PFL.

37.     Robinson and Uim begrudgingly approved Ms. Marin's request.

38.     On or around November 2, 2023, Ms. Marin formally applied for future FMLA leave associated with the upcoming birth of her child (and baby bonding), as well as for NY PFL leave, which was approved.

39.     Later that month, Ms. Marin woke up feeling extremely nauseated due to her pregnancy.

40.     As such, Ms. Marin contacted Robinson, disclosed her pregnancy-related nausea, and requested the reasonable pregnancy-related accommodation of arriving to work around 30 minutes late.

41.     Robinson granted Ms. Marin's request, and she utilized this accommodation.

42.     Over the next three (3) months, Ms. Marin continued suffering from severe morning sickness and requested the reasonable pregnancy-related accommodation of arriving to work around 30 minutes late approximately 4-5 times per month.

43.     Specifically, Ms. Marin contacted Robinson, disclosed her pregnancy-related symptoms, and requested time off when she utilized this accommodation.

44. Robinson approved these requests, and Ms. Marin utilized this accommodation.

45. However, in or around late November 2023, Robinson appeared to develop a discriminatory animus against Ms. Marin. For example, she often demanded to know where Ms. Marin was when she arrived to work on the mornings she utilized the reasonable accommodation of time off due to her severe morning sickness despite Ms. Marin contacting her (Robinson) beforehand.

46. Ms. Marin reminded Robinson that she utilized time off as a reasonable pregnancy-related accommodation, which Robinson had previously approved.

47. Robinson seemed annoyed by Ms. Marin's use of a reasonable pregnancy related accommodation, as well as Ms. Marin's reminder of her need for the accommodation.

48. Ms. Marin continued performing well despite this discriminatory treatment.

49. In or around January 2024, Ms. Marin began suffering from heightened fatigue.

50. Later that month, during her prenatal appointment, Ms. Marin's doctor diagnosed me with pre-eclampsia and hypertension.

51. Ms. Marin's pre-eclampsia is, and at all relevant times was, an impairment which substantially limits, or at all relevant times limited, one or more of her major life activities including, but not limited to, sitting, standing, bending, walking, and breathing. Further, Ms. Marin's pre-eclampsia is, or at all relevant times was, an impairment which substantially limited one or more of her major bodily functions, including her musculoskeletal and reproductive system.

52. Therefore, at all relevant times Ms. Marin's pre-eclampsia was a disability, and she was a qualified individual with a disability under state, city, and federal law.

53. Ms. Marin's hypertension is, and at all relevant times was, an impairment which substantially limits, or at all relevant times limited, one or more of her major life activities including, but not limited to, eating and drinking. Further, Ms. Marin's hypertension is, or at all relevant times was, an impairment which substantially limits one or more of her major bodily functions, including her cardiovascular and endocrine systems.

54. Therefore, Ms. Marin's hypertension was a disability, and she was a qualified individual with a disability under state, city, and federal law.

55. Due to Ms. Marin's disabilities, her doctor recommended that she reduce her hours at work to 32 hours per week instead of 40 hours per week.

56. Shortly thereafter, Ms. Marin disclosed her pregnancy-related disability diagnoses to Robinson and requested the reasonable pregnancy-related and disability-related accommodation of temporarily working 32 hours per week instead of 40 hours per week per her doctor's recommendation.

57. Robinson told Ms. Marin that she would contact the Company's Human Resources department, which supposedly needed to approve Ms. Marin's request.

58. The Company did not approve Ms. Marin's request in a timely manner, which resulted in the constructive denial of her accommodation request and prevented Ms. Marin from using the accommodation when she wanted to.

59. Indeed, for the next several weeks, Ms. Marin continued to be scheduled to work 40 hours, which was in effect a denial of her request for an accommodation and a seeming refusal to engage in an interactive dialogue.

60.     Additionally, Robinson began making negative comments about Ms. Marin's appearance, which seemingly were related to her pregnancy and pregnancy-related conditions. For example, she remarked that Ms. Marin looked "homeless" and "like a bum."

61.     Notably, Ms. Marin did not dress differently than she did before she became pregnant. In fact, Ms. Marin was required to wear a uniform to work throughout her employment and did so.

62.     Clearly, these comments were derogatory about Ms. Marin's appearance as a pregnant woman and/or about her appearance due to the fatigue caused by her pregnancy and disabilities.

63.     In or around March 2024, Ms. Marin raised protected concerns to John Latalle ("Latalle"), a Human Resources representative, including raising concerns about Robinson's derogatory comments about her appearance, which she believed were due to her pregnancy and/or disabilities and/or retaliation based on requesting reasonable accommodations. Ms. Marin also asked about the status of her reasonable accommodation request of working reduced hours, which the Company had seemingly refused to approve and was currently denying.

64.     Latalle is a man who, upon information and belief, during Ms. Marin's employment with the Company, was not regarded by the Company as disabled, did not request or utilize reasonable accommodations regarding disabilities, and did not utilize protected leave under the FMLA and/or NYPFL.

65.     Latalle dismissed Ms. Marin's concerns and asserted Robinson was "just talking down" to Ms. Marin. Despite acknowledging Robinson was "talking down" to Ms. Marin (even if he attempted to minimize it), Latalle did not share any plans to meaningfully address her

protected concerns, and, upon information and belief, he did not take any meaningful actions to address Ms. Marin's protected concerns

66.     Shockingly, Latalle also told Ms. Marin that Robinson did not provide Human Resources with information about her disability-related accommodation request.

67.     It's clear Robinson intentionally failed to provide Human Resources with this information to prevent the approval of her reasonable pregnancy-related accommodation.

68.     As such, Ms. Marin provided Latalle with this information.

69.     Latalle approved Ms. Marin's request for reduced hours, and she utilized this accommodation.

70.     Despite Ms. Marin raising protected concerns to Human Resources, Robinson continued to tell Ms. Marin she looked "homeless" and "like a bum."

71.     In or around March 2024, Ms. Marin raised protected concerns to Latalle again, including specifically expressing that Robinson continued to engage in discriminatory behavior.

72.     Latalle acknowledged Ms. Marin's protected concerns. However, he did not offer any plans to meaningfully address them, and, upon information and belief, he did not take any meaningful actions to address Ms. Marin's protected concerns.

73.     On or around May 10, 2024, Ms. Marin became concerned because she had not felt her baby move for at least a full day.

74.     Notably, Ms. Marin's doctor had previously instructed her that not feeling her baby move for such an extended period of time could be a sign of a miscarriage and she should therefore seek medical treatment urgently if this occurred,

75.    Alarmed, Ms. Marin disclosed this information to Robinson and requested the reasonable pregnancy-related accommodation of taking the rest of the day off work to receive medical care.

76.    Notably, this request was protected by FMLA.

77.    Robinson approved Ms. Marin's request, and she utilized this accommodation.

78.    Indeed, Ms. Marin visited her doctor, who informed her that, due in part to her pre-eclampsia, her baby needed to be delivered on an emergency basis on or around the next day by C-section.

79.    Ms. Marin contacted Robinson and informed her that her baby was unexpectedly being delivered via c-section around one (1) month before her due date. As such, she requested that she be allowed to take continuous medical leave beginning that day.

80.    Robinson approved Ms. Marin's request.

81.    On or around the next day, Ms. Marin's baby was born via c-section.

82.    Ms. Marin's doctor informed her that, due to her pre-eclampsia, her blood pressure was dangerously high, thereby causing further hypertension. Ms. Marin's doctor also recommended that she extend her medical leave by around three (3) weeks to monitor her disabilities.

83.    As such, Ms. Marin contacted Robinson and Latalle, disclosed her further hypertension diagnosis, and requested the reasonable disability-related accommodation of extending her medical leave by around three (3) weeks with a return-to-work date of around September 27, 2024.

84.    Robinson and Latalle approved Ms. Marin's request, and she utilized this accommodation.

85. Shortly thereafter, Ms. Marin began experiencing heightened feelings of anxiety and anger. As such, she scheduled and attended a doctor's appointment, during which she was diagnosed with postpartum anxiety.

86. Ms. Marin's postpartum anxiety is a pregnancy-related impairment that substantially limits (and at all relevant times limited) one or more of her major life activities including, but not limited to, sleeping, caring for herself, and engaging in social activity. Further, Ms. Marin's postpartum anxiety is (and at all relevant times was) an impairment which substantially limited one or more of her major bodily functions, including her neurological and brain function.

87. Accordingly, at all relevant times, Ms. Marin's postpartum anxiety was a disability, and she was a qualified individual with a disability under federal, city, and state law.

88. Throughout the remainder of Ms. Marin's leave, her doctor continued to monitor her hypertension. Her doctor also recommended that, upon her return to work, she check her blood pressure twice daily and take the rest of the day off to rest if her blood pressure was high. Her doctor explained that failing to rest when her blood pressure was high could lead to blood clots and other post-partum complications.

89. Ms. Marin kept Robinson and Latalle apprised of her disabilities and ongoing pregnancy-related conditions. She also disclosed her new disability diagnosis to them.

90. On or around September 27, 2024, Ms. Marin returned to work as scheduled.

91. Upon her return, Ms. Marin requested from Robinson the reasonable disability-related accommodation of brief breaks (around five (5) minutes in duration) to check her blood pressure twice daily. She also requested the reasonable disability-related accommodation of taking the rest of the day off if and when her blood pressure was dangerously high. She

explained that she would only need this accommodation for a temporary period while she was still recovering from giving birth.

92. Robinson seemed annoyed, but begrudgingly approved Ms. Marin's request.

93. Ms. Marin utilized these accommodations.

94. At or around this time, Ms. Marin contacted the Company's Human Resources department and requested paperwork to apply for an intermittent disability-related leave, which she filled out and had approved.

95. Shortly thereafter, Robinson's discriminatory animus towards Ms. Marin worsened. For example, Robinson began ignoring her in an annoyed manner most of the time at work.

96. Notably, Robinson did not ignore Ms. Marin's nondisabled coworkers, nor did Robinson ignore Ms. Marin prior to her leave.

97. In or around October 2024, Ms. Marin raised protected concerns to Latalle, specifically describing the disparate treatment she was being subjected to by Robinson, which she believed was due to her pregnancy and/or disabilities and/or as retaliation for utilizing reasonable accommodations and/or raising protected concerns.

98. Latalle told Ms. Marin that Robinson was "just under stress," and again dismissed her protected concerns.

99. On or around November 12, 2024, Ms. Marin checked her blood pressure and noticed it was quite high. Therefore, she requested from Robinson the reasonable disability-related accommodation of taking the rest of the day off.

100. Robinson began berating Ms. Marin and told her, "Your pregnancy is not a disability."

101. Ms. Marin reminded Robinson that she was just following her doctor's orders related to her ongoing post-pregnancy hypertension, and she (Robinson) had already approved this reasonable accommodation.

102. Robinson begrudgingly approved Ms. Marin's request, but it was clear Robinson was annoyed and angry by Ms. Marin's request for and utilization of this accommodation.

103. On or around November 15, 2024, Robinson told Ms. Marin that she was being terminated, allegedly because the Company allegedly did not need two (2) front desk receptionists.

104. Therefore, Ms. Marin was involuntarily terminated from her position with the Company on or around November 15, 2024.

105. Despite Robinson's explanation, there was significant work in Ms. Marin's position even with two front desk receptionists.

106. Upon information and belief, Ms. Marin's performance met or exceeded the other receptionist's performance.

107. Notably, the other receptionist was a man who, upon information and belief, during Ms. Marin's employment with the Company, was not disabled, was not regarded by the Company as disabled, did not request or utilize reasonable accommodations regarding disabilities, and did not utilize protected leave under the FMLA and/or NYPFL.

108. This male receptionist was not terminated by the Company.

109. Indeed, the Company instead chose to terminate the female Ms. Marin who had a longer tenure than the similarly situated male employee who was not terminated and had recently returned from a pregnancy leave and was continuing to utilize pregnancy and disability-related accommodations.

110.    Upon information and belief, Ms. Marin also had a better performance record than the male receptionist who was not terminated.

111.    Upon information and belief, Ms. Marin was replaced by a nondisabled man.

112.    On or around February 19, 2025, the Plaintiff timely filed a Charge of Discrimination (the "Charge") with the New York State Division on Human Rights ("NYSDHR").

113.    On or around February 11, 2026, at Ms. Marin's request, the NYSDHR issued an administrative convenience dismissal for Ms. Marin's Charge, thus allowing her to pursue her claim in court.

114.    Ms. Marin notified the EEOC of her intent to file a complaint in court and, accordingly, requested that the EEOC issue Ms. Marin a right to sue letter.

115.    The EEOC issued Ms. Marin a Right to Sue notice on or around [date].

116.    This lawsuit is timely filed.

## COUNT I

### (Interference with and Retaliation for Exercising Rights under, the Family and Medical Leave Act – 29 U.S.C. §2615)

### Plaintiff v. All Defendants (Compass Group and Eversource)

117.    Ms. Marin incorporates all paragraphs above and below as if set forth fully herein.

118.    During all relevant times, the Defendants were engaged in an industry affecting commerce and employed 50 or more employees for each working day during 20 or more calendar work weeks in each current and/or preceding calendar year.

119.    As such, at all relevant times, the Defendants were employers under the FMLA.

120. Each of the Defendants were both integrated and joint employers with regard to Ms. Marin because Compass Group controlled her pay whereas she was hired and terminated at the direction of Eversource.

121. At all relevant times, the Defendants (including each of the Defendants both individually and as a collective integrated/joint employer) employed 50 or more employees within 75 miles of Ms. Marin's worksite.

122. At all relevant times, Ms. Marin had worked for the Company for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

123. As such, Ms. Marin was eligible employee as defined under the FMLA.

124. Ms. Marin suffered from one or more serious health conditions for which she received continuing care, including, but not limited to, her pregnancy, hypertension, preeclampsia, and post-partum anxiety.

125. Ms. Marin was an eligible employee entitled to FMLA leave.

126. Ms. Marin sought to exercise her rights under the FMLA, including by requesting and utilizing one or more leaves protected under the FMLA, both in the form of intermittent and continuous leave, both for her own health conditions, to give birth, and to bond with her baby.

127. Specifically, Ms. Marin requested one or more FMLA leaves in the form of taking intermittent time off for parental leave and her own health condition in or around May 2024.

128. Ms. Marin timely notified the Defendants that she would need FMLA leave and timely turned in all requested paperwork and information related to her FMLA leave requests and utilization of FMLA leave.

129. The paperwork turned in by Ms. Marin was properly completed.

130.    The leave(s) Ms. Marin utilized were approved by the Company and protected by the FMLA.

131.    The Defendants interfered with Ms. Marin's rights under FMLA by denying her leave to which she was entitled, denying her reinstatement to her position following requested leave, subjecting her to adverse employment actions, a severe and pervasive hostile, harassing, and discriminatory work environment; denying Ms. Marin accommodations for her pregnancy and/or pregnancy-related condition; and/or the termination of Ms. Marin's employment.

132.    The Defendants, including by and through their agents, retaliated and/or discriminated against Ms. Marin for requesting and/or utilizing FMLA leave by subjecting Ms. Marin to adverse actions, including, but not limited to, a hostile and harassing work environment, and terminating Ms. Marin's employment.

133.    The Defendants' actions, including Defendant's violations of the FMLA, were willful and undertaken in bad faith.

134.    As a direct and proximate result of the Defendant's violation of the FMLA, Ms. Marin has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

135.    Ms. Marin seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorneys' fees, and costs.

## COUNT II

**(Harassment and Discrimination Based on Pregnancy, a Pregnancy-Related Condition, and Sex in Violation of the New York State Human Rights Law, Executive Article 15, Section 296)**

**Plaintiff v. All Defendants (Compass Group and Eversource)**

136.    Ms. Marin incorporates all paragraphs above and below as if set forth fully herein.

137.    During all relevant times, the Defendants were employers under the definitions applicable to the New York State Human Rights Law, Executive Article 15, Section 296 because the Company employed four or more persons.

138.    Ms. Marin requested and/or utilized pregnancy-related reasonable accommodations that would have assisted her in performing the essential functions of her job. These requested accommodations included, but were not limited to, reduced hours, time off to seek medical treatment, and breaks to check her blood pressure.

139.    Ms. Marin's requested pregnancy-related accommodations did not pose an undue burden on the Defendants.

140.    The Defendants, by and through their agents, harassed and/or discriminated against Ms. Marin with respect to her compensation, terms, conditions, and/or privileges of employment because of Ms. Marin's sex (female), because of her pregnancy, pregnancy-related condition, and/or because she was a pregnant woman ("sex plus" discrimination).

141.    More specifically, by way of illustration and not limitation, the Defendants subjected Ms. Marin to adverse actions, including, but not limited to: a severe and pervasive hostile, harassing, and discriminatory work environment; denying Ms. Marin accommodations for her pregnancy and/or pregnancy-related condition; and/or the termination of Ms. Marin's employment because she was a woman and/or because she was a pregnant woman.

142. The Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Marin and/or constituted conduct so reckless to amount to such disregard.

143. As a direct and proximate result of the Defendants' violations of the New York State Human Rights Law, Executive Article 15, Section 296, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

144. Ms. Marin seeks all damages to which she is entitled, including, but not limited to reinstatement, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, emotional distress damages, other compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, injury to reputation, diminished earning capacity, reinstatement of her position with full seniority and benefits, interest, attorney's fees, and costs.

**COUNT III**

**(Harassment, and Discrimination Based on Pregnancy, a Pregnancy-Related Condition, and Sex in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (Compass Group and Eversource)**

145. Ms. Marin incorporates all paragraphs above and below as if set forth fully herein.

146. During all relevant times, the Defendants were employers under the definitions applicable to the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York because the Company employed four or more persons.

147.    Each of the Defendants were both integrated and joint employers with regard to Ms. Marin because Compass Group controlled her pay whereas she was hired and terminated at the direction of Eversource.

148.    Ms. Marin requested and/or utilized pregnancy-related reasonable accommodations that would have assisted her in performing the essential functions of her job. These requested accommodations included, but were not limited to, reduced hours, time off to seek medical treatment, and breaks to check her blood pressure.

149.    Ms. Marin's requested pregnancy-related accommodations did not pose an undue burden on the Defendants.

150.    The Defendants, by and through their agents, harassed and/or discriminated against Ms. Marin with respect to her compensation, terms, conditions, and/or privileges of employment because of Ms. Marin's sex (female), because of her pregnancy, pregnancy-related condition, and/or because she was a pregnant woman ("sex plus" discrimination).

151.    More specifically, by way of illustration and not limitation, the Defendants subjected Ms. Marin to adverse actions, including, but not limited to, a severe and pervasive hostile, harassing, discriminatory work environment, denying Ms. Marin accommodations for her pregnancy and/or pregnancy-related condition; and/or the termination of Ms. Marin's employment because she was a woman and/or because she was a pregnant woman.

152.    The Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Marin and/or constituted conduct so reckless to amount to such disregard.

153.    As a direct and proximate result of the Defendants' violations of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, the

Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

154.    Ms. Marin seeks all damages to which she is entitled, including, but not limited to reinstatement, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, emotional distress damages, other compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, injury to reputation, diminished earning capacity, reinstatement of her position with full seniority and benefits, interest, attorney's fees, and costs.

## COUNT VI

**(Discrimination Based on Pregnancy, a Pregnancy-Related Condition, and Sex in Violation of 42 U.S.C. §§2000e, et. seq.)**

**Plaintiff v. All Defendants (Compass Group and Eversource)**

155.    Ms. Marin incorporates all paragraphs above and below as if set forth fully herein.

156.    During all relevant times, the Defendants were employers under Title VII, 42 U.S.C. §§2000e, et. seq. (hereinafter "Title VII") because it employed more than 15 persons for 20 or more calendar weeks within the previous 12-month period.

157.    The Pregnancy Discrimination Act made amendments to Title VII and was incorporated into it.

158.    Each of the Defendants were both integrated and joint employers with regard to Ms. Marin because Compass Group controlled her pay whereas she was hired and terminated at the direction of Eversource.

159.    Ms. Marin requested and/or utilized pregnancy-related reasonable accommodations that would have assisted her in performing the essential functions of her job. These requested accommodations included, but were not limited to, reduced hours, time off to seek medical treatment, and breaks to check her blood pressure.

160.    Ms. Marin's requested pregnancy-related accommodations did not pose an undue burden on the Defendants.

161.    The Defendants, by and through its agents, harassed, and/or discriminated against Ms. Marin with respect to her compensation, terms, conditions, and/or privileges of employment because of Ms. Marin's sex (female), because of her pregnancy, pregnancy-related condition, and/or because she was a pregnant woman ("sex-plus" discrimination).

162.    More specifically, by way of illustration and not limitation, the Defendants subjected Ms. Marin to adverse actions, including, but not limited to, a severe and pervasive hostile, harassing, discriminatory work environment, denying Ms. Marin accommodations for her pregnancy and/or pregnancy-related condition; and/or the termination of Ms. Marin's employment because she was a woman and/or because she was a pregnant woman.

163.    As a direct and proximate result of the Company's violation of 42 U.S.C. §§2000e, et. seq., Ms. Marin has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

164.    The Defendants acted with malice and/or with reckless indifference to the federally protected rights of Ms. Marin.

165.    Ms. Marin seeks all damages to which she is entitled, including, but not limited to, reinstatement, lost compensation and benefits (including, but not limited to, back

pay and front pay), other monetary damages, diminished earning capacity, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, reinstatement of her position with full seniority and benefits, interest, attorney's fees, and costs.

## COUNT V

**(Harassment and Discrimination Based on Disability in Violation of New York State Human Rights Law, Executive Law Article 15, Section 296)**

**Plaintiff v. All Defendants (Compass Group and Eversource)**

166.    Ms. Marin incorporates all paragraphs above and below as if set forth fully herein.

167.    Ms. Marin suffers (and at all relevant times suffered) from disabilities, including, but not limited to, hypertension, preeclampsia, and post-partum anxiety. Ms. Marin's hypertension substantially limits, or at all relevant times limited, one or more of her major life activities, including eating, drinking, socializing, and caring for herself. This further substantially limits the operations of one or more of her major bodily functions, including her cardiovascular and endocrine systems. Accordingly, Ms. Ms. Marin's hypertension was a disability, and she is a qualified individual with disabilities under New York State Human Rights Law, Executive Law Article 15, Section 296.

168.    Ms. Marin's preeclampsia substantially limits, or at all relevant times limited, one or more of her major life activities, including sitting, standing, eating, drinking, socializing, and caring for herself. This further substantially limits, or at all relevant times limited, the operations of one or more of her major bodily functions, including her reproductive system. Accordingly, Ms. Ms. Marin's preeclampsia was a disability, and she is a qualified individual with disabilities under New York State Human Rights Law, Executive Law Article 15, Section 296.

169.    Ms. Marin's post-partum anxiety substantially limits, or at all relevant times limited, one or more of her major life activities, including sleeping, socializing, and caring for herself. This further substantially limits, or at all relevant times limited, the operations of one or more of her major bodily functions, including her brain and neurological systems. Accordingly, Ms. Ms. Marin's post-partum anxiety was a disability, and she is a qualified individual with disabilities under New York State Human Rights Law, Executive Law Article 15, Section 296.

170.    At all relevant times, Ms. Marin was a qualified employee and was capable of performing the essential functions of her job with or with one or more reasonable accommodations.

171.    At all relevant times, Ms. Marin was a qualified individual with a disability.

172.    Ms. Marin disclosed her disabilities to the Defendants, and/or the Defendants were aware of Ms. Marin's disabilities, and/or the Defendants regarded Ms. Marin as disabled.

173.    Ms. Marin requested and/or utilized disability-related reasonable accommodations that would have assisted her in performing the essential functions of her job.  These requested reasonable accommodations included, but were not limited to, protected time off to seek medical treatment for her disabilities, reduced hours late start times, and breaks to check her blood pressure.

174.    Ms. Marin's requested disability-related accommodations did not pose an undue burden on Defendants.

175.    The Defendants discriminated against Ms. Marin due to her disability by subjecting Ms. Marin to adverse actions, including, but not limited to, a severe and pervasive hostile, harassing, discriminatory work environment, denying Ms. Marin accommodations for

her pregnancy and/or pregnancy-related condition; and/or the termination of Ms. Marin's

employment. Marin's employment because of the Plaintiff's disabilities.

176.    Upon information and belief, the Defendants replaced Ms. Marin with a lesser or

similarly qualified, non-disabled employee.

177.    The Defendants' actions were willful, wanton, reckless, and/or involved a

conscious disregard of the rights of Ms. Marin and/or conduct so reckless to amount to such

disregard.

178.    As a direct and proximate result of the Defendant's violations of New York State

Human Rights Law, Executive Law Article 15, Section 296, Ms. Marin has suffered and

continues to suffer damages, including, but not limited to, lost compensation and benefits, other

monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and

emotional damages.

179.    Ms. Marin seeks all damages to which she is entitled, including, but not limited

to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced

earning capacity, other financial damages, uncapped compensatory damages (including, but not

limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish,

loss of enjoyment of life, reinstatement with full seniority and benefits, and other nonpecuniary

losses), punitive damages, reinstatement of her job with full seniority and benefits, injury to

reputation, interest, attorneys' fees, and costs.

## COUNT VI

**(Harassment and Discrimination Based on Disability in Violation of New York City
Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (Compass Group and Eversource)**

180.    Ms. Marin incorporates all paragraphs above and below as if set forth fully herein.

181.    Ms. Marin suffers (and at all relevant times suffered) from disabilities (hypertension, preeclampsia, and post-partum anxiety). These disabilities substantially limit, or at all relevant times limited, one or more of her major life activities, including as set forth above. These disabilities further substantially limit the operations of one or more of her major bodily functions, including as set forth above. Accordingly, Ms. Marin 's hypertension, preeclampsia, and post-partum anxiety were disabilities, and she is a qualified individual with disabilities under New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York.

182.    At all relevant times, Ms. Marin was a qualified employee and was capable of performing the essential functions of her job with or with one or more reasonable accommodations.

183.    At all relevant times, Ms. Marin was a qualified individual with a disability.

184.    Ms. Marin disclosed her disabilities to the Defendants, and/or the Defendants were aware of Ms. Marin's disabilities, and/or the Defendants regarded Ms. Marin as disabled.

185.    Ms. Marin requested and/or utilized disability-related reasonable accommodations that would have assisted her in performing the essential functions of her job.  These requested reasonable accommodations included, but were not limited to, protected time off to seek medical treatment for her disabilities, reduced hours, later start times, and breaks to check her blood pressure.

186.    Ms. Marin's requested handicap-related accommodations did not pose an undue burden on Defendants.

187.    The Defendants discriminated against Ms. Marin due to her disability by subjecting Ms. Marin to adverse actions, including, but not limited to, a severe and pervasive

hostile, harassing, discriminatory work environment, denying Ms. Marin accommodations for her pregnancy and/or pregnancy-related condition; and/or the termination of Ms. Marin's employment.

188.    Upon information and belief, the Defendants replaced Ms. Marin with a lesser or similarly qualified, non-disabled employee.

189.    The Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Marin and/or conduct so reckless to amount to such disregard.

190.    As a direct and proximate result of the Defendant's violations of New York State Human Rights Law, Executive Law Article 15, Section 296, Ms. Marin has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

191.    Ms. Marin seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, reinstatement with full seniority and benefits, and other nonpecuniary losses), punitive damages, injury to reputation, interest, attorneys' fees, and costs.

## COUNT VII

**(Disability Discrimination in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Plaintiff v. All Defendants (Compass Group and Eversource)**

192.    Ms. Marin incorporates all paragraphs above and below as if set forth fully herein.

193.    During all relevant times, the Defendants were employers under the ADA because it employed more than 15 persons for 20 or more calendar weeks within the previous 12-month period.

194.    Each of the Defendants were both integrated and joint employers with regard to Ms. Marin because Compass Group controlled her pay whereas she was hired and terminated at the direction of Eversource.

195.    Ms. Marin suffers (and at all relevant times suffered) from disabilities (hypertension, preeclampsia, and post-partum anxiety). This disabilities substantially limits one or more of her major life activities, including as set forth above. These disabilities further substantially limits the operations of one or more of her major bodily functions, including as set forth above. Accordingly, Ms. Marin 's hypertension, preeclampsia, and post-partum anxiety were disabilities, and she is a qualified individual with a disability under the ADA.

196.    At all relevant times, Ms. Marin was a qualified employee and was capable of performing the essential functions of her job with or without one or more reasonable accommodations.

197.    Ms. Marin disclosed her disabilities to the Defendants, and/or the Defendants was aware of Ms. Marin's disabilities, and/or the Defendants regarded Ms. Marin as disabled.

198.    Ms. Marin requested and/or utilized disability-related reasonable accommodations that would have assisted her in performing the essential functions of her job.  These requested reasonable accommodations included, but were not limited to, protected time off to seek medical treatment, reduced hours, later start times, and breaks to check her blood pressure.

199.    Ms. Marin's requested disability-related accommodations did not pose an undue burden on Defendants.

200.    The Defendants discriminated against Ms. Marin due to her disabilities by subjecting Ms. Marin to adverse actions, including, but not limited to, a severe and pervasive hostile, harassing, discriminatory work environment, denying Ms. Marin accommodations for her pregnancy and/or pregnancy-related condition; and/or the termination of Ms. Marin's employment

201.    Upon information and belief, the Company replaced Ms. Marin with a lesser or similarly qualified, non-disabled employee.

202.    The Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Marin and/or conduct so reckless as to amount to such disregard.

203.    As a direct and proximate result of the Defendants' violations of the ADA, Ms. Marin has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

204.    Ms. Marin seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, reinstatement with full seniority and benefits, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT VIII

**(Retaliation in Violation of New York State Human Rights Law, Executive Law Article 15, Section 296)**

**Plaintiff v. All Defendants (Compass Group and Eversource)**

205.    Ms. Marin incorporates all paragraphs above and below as if set forth fully herein.

206.    Ms. Marin engaged in protected activity under the New York State Human Rights Law, including, but not limited to, (i) opposing, expressing protected concerns, and/or engaging in protected activity regarding hostile work environment harassment; (ii) opposing, expressing protected concerns, and/or engaging in other protected activity related to the discriminatory and retaliatory actions taken by the Defendants due to Ms. Marin's sex and/or pregnancy, (iii) requesting and utilizing accommodations for her pregnancy and pregnancy-related conditions, and/or (iv) expressing concerns that the Company was denying, or retaliating against her for utilizing reasonable accommodations.

207.    Specifically, and by way of example and not limitation, Ms. Marin raised protected concerns about her negative treatment due to her pregnancy and/or because she requested reasonable accommodations.

208.    The Defendants discriminated against and/or retaliated against Ms. Marin for opposing one or more acts or practices made unlawful by the New York State Human Rights Law, including, but not limited to, the aforementioned protected activity, by subjecting Ms. Ubinas to adverse actions including, but not limited to, a severe and pervasive hostile, harassing, discriminatory work environment, denying Ms. Marin accommodations for her pregnancy and/or pregnancy-related condition; and/or the termination of Ms. Marin's employment.

209.    The Defendants unlawfully coerced, intimidated, threatened and/or interfered with Ms. Marin's exercising of or enjoyment of rights granted by the New York State Human Rights Law.

210. The Defendants' actions against Ms. Marin were wanton, willful, and malicious. The Defendants acted willfully and/or with reckless disregard for the state-protected rights of Ms. Marin.

211. As a direct and proximate result of the Defendants' violations of the NYSHRL, Ms. Marin has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary damages, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

212. Ms. Marin seeks all damages to which she is entitled, including, but not limited to, reinstatement, lost compensation and benefits (including but not limited to back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, reinstatement of her job with full seniority and benefits, attorneys' fees, interest, and costs.

## COUNT IX

**(Retaliation in Violation of New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (Compass Group and Eversource)**

213. Ms. Marin incorporates all paragraphs above and below as if set forth fully herein.

214. Ms. Marin engaged in protected activity under the New York City Human Rights Law, including, but not limited to (i) opposing, expressing protected concerns, and/or engaging in other protected activity regarding hostile work environment harassment; (ii) opposing, expressing protected concerns, and/or engaging in other protected activity related to the

discriminatory and retaliatory actions taken by the Defendants due to Ms. Marin's sex and/or pregnancy, (iii) requesting and utilizing accommodations for her pregnancy and pregnancy-related conditions, and/or (iv) expressing concerns that the Company was denying, or retaliating against her for using, reasonable accommodations.

215.    Specifically, and by way of example and not limitation, Ms. Marin raised protected concerns about her negative treatment due to her pregnancy and/or because she requested reasonable accommodations.

216.    The Defendants discriminated against and/or retaliated against Ms. Marin for opposing one or more acts or practices made unlawful by the New York City Human Rights Law, including, but not limited to, the aforementioned protected activity, by subjecting Ms. Marin to adverse actions including, but not limited to, a severe and pervasive hostile, harassing, discriminatory work environment, denying Ms. Marin pregnancy and/or pregnancy-related accommodations, and/or the termination of Ms. Marin's employment because of her sex and/or pregnancy, (iii) requesting and utilizing accommodations for her pregnancy and pregnancy-related conditions, and/or (iv) expressing concerns that the Company was denying, or retaliating against her for using, reasonable accommodations.

217.    The Defendants unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Marin's exercising of or enjoyment of rights granted by the New York City Human Rights Law.

218.    The Defendants' actions against Ms. Marin were wanton, willful, and malicious. The Defendants acted willfully and/or with reckless disregard for the city protected rights of Ms. Marin.

219.    As a direct and proximate result of the Defendants' violations of the NYCHRL, Ms. Marin has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary damages, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

220.    Ms. Marin seeks all damages to which she is entitled, including, but not limited to, reinstatement, lost compensation and benefits (including but not limited to back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT X

**(Retaliation in Violation of 42 U.S.C. §§ 2000e, et seq.)**

**Plaintiff v. All Defendants (Compass Group and Eversource)**

221.    Ms. Marin incorporates all paragraphs above and below as if set forth fully herein.

222.    Ms. Marin engaged in protected activity under Title VII, including, but not limited to: (i) opposing, voicing protected concerns, and/or engaging in other protected activity regarding a harassing and hostile work environment; (ii) opposing, voicing protected concerns, and/or engaging in other protected activity related to the discriminatory and retaliatory actions taken by the Defendants due to Ms. Marin's sex and pregnancy, (iii) requesting and utilizing accommodations for her pregnancy and pregnancy-related condition, and/or (iv) expressing

concerns that the Company was denying, or retaliating against her for using, reasonable accommodations.

223. Specifically, and by way of example and not limitation, Ms. Marin raised protected concerns about her negative treatment due to her pregnancy and/or because she requested reasonable accommodations.

224. The Defendants discriminated against and/or retaliated against Ms. Marin for opposing one or more practices made unlawful by Title VII and requesting accommodations for her pregnancy and pregnancy-related condition by subjecting Ms. Marin to adverse actions, including, but not limited to, a severe and pervasive hostile, harassing, discriminatory work environment, denying Ms. Marin accommodations for her pregnancy and/or pregnancy-related condition; and/or the termination of Ms. Marin's employment.

225. The Defendants unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Ubinas's exercising of, or enjoyment of, one or more rights granted by Title VII.

226. The Defendant acted with malice and/or with reckless indifference to the federally protected rights of Ms. Marin.

227. As a direct and proximate result of the Defendants' violations of Title VII, Ms. Marin has suffered and continues to suffer damages, including, but not limited to, reinstatement, compensatory damages, lost compensation and benefits, interest on lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

228. Ms. Marin seeks all damages to which she is entitled, including, but not limited to reinstatement, compensatory damages, including but not limited to emotional distress

damages and lost compensation and benefits, including back pay and front pay, punitive damages, interest, attorneys' fees, and costs.

## COUNT XI

**(Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Plaintiff v. All Defendants (Compass Group and Eversource)**

229. Ms. Marin incorporates all paragraphs above and below as if set forth fully herein.

230. Ms. Marin engaged in protected activity under the ADA, including, but not limited to: (i) opposing, voicing protected concerns, and/or engaging in other protected activity related to the discriminatory actions taken by Defendants due to Ms. Marin's disability and/or (ii) requesting and/or utilizing reasonable accommodations for disabilities which were intended to allow Ms. Marin to perform the essential functions of her job.

231. The Defendants unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Ubinas's exercising of, or enjoyment of, one or more rights granted by the ADA.

232. More specifically, the Defendants subjected Ms. Marin to adverse actions, including but not limited to, a severe and pervasive hostile, harassing, discriminatory work environment, denying Ms. Marin accommodations for her pregnancy and/or pregnancy-related condition; and/or the termination of Ms. Marin's employment because she engaged in protected activity under the ADA.

233. The Defendants acted with malice and/or with reckless indifference to the federally protected rights of Ms. Marin.

234. As a direct and proximate result of the Defendants' violation of the ADA, Ms. Marin has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

235.   Ms. Marin seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, reinstatement with full seniority and benefits, and other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorneys' fees, and costs.

## COUNT XII

**(Retaliation in Violation of New York Whistleblower Law, NY Labor Law § 740)**

**Plaintiff v. All Defendant (Compass Group and Eversource)**

217.   Ms. Marin incorporates all paragraphs above and below as if set forth fully herein.

218.   Ms. Marin engaged in protected activity under New York Labor Law Section 740, including by raising protected concerns about the Defendants' discriminatory behavior related to her sex, pregnancy, disabilities, and/or requests/utilization of reasonable pregnancy and/or disability-related accommodations.

219.   The Defendants retaliated against Ms. Marin with adverse actions, including, but not limited to: a severe and pervasive hostile, harassing, discriminatory work environment, denying Ms. Marin accommodations for her pregnancy and/or pregnancy-related condition; and/or the termination of Ms. Marin's employment because of her protected activity.

220.   As a direct and proximate result of the Defendants' violations of the New York Labor Law Section 740, Ms. Marin has suffered and continues to suffer damages, including, but

not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

221. Ms. Marin seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, emotional distress damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorneys' fees, and costs.

## COUNT XIII

### (Retaliation in Violation of N.Y. Lab. Law § 215)

### Plaintiff v. All Defendants (Compass Group and Eversource)

222. Ms. Marin incorporates all paragraphs above and below as if set forth fully herein.

223. Ms. Marin's disabilities (including her hypertension, pre-eclampsia, and post-partum anxiety) were serious health conditions which qualified her for leave protected under state law.

224. Ms. Marin notified the Defendants that she needed to take a legally protected absence pursuant to state, federal, and/or city law.

225. Ms. Marin's right to take a disability-related leave was protected under federal law, New York law, including, but not limited to, the FMLA and the NYPFL.

226. Ms. Marin took one or more legally protected absences which were protected pursuant to state law.

227. The Defendants retaliated and/or discriminated against Ms. Marin for her legally protected absences by subjecting Ms. Marin to adverse actions, including, but not limited to,

subjecting Ms. Marin to a harassing and otherwise hostile work environment and/or terminating Ms. Marin's employment.

228.    As a direct and proximate result of the Defendant's violation of N.Y. Lab. Law §215, Ms. Marin has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

229.    Ms. Marin seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, emotional distress damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorneys' fees, and costs.

## COUNT XIV

**(Retaliation Based on Plaintiff's Reproductive Health Decision Making in Violation of New York Labor Law – NY Labor Ch. 31, Art. 7 § 203-E)**

**Plaintiff v. All Defendants (Compass Group and Eversource)**

236.    Ms. Marin incorporates all paragraphs above and below as if set forth fully herein.

237.    The Defendants are employers as defined by New York Labor Law Ch. 31, Art. 7 § 203-E.

238.    The Defendants employed Ms. Marin.

239.    Ms. Marin engaged in decisions and activity protected under the New York Labor Law, including, but not limited to, making decisions related to her reproductive health including, but not limited to, becoming pregnant, seeking medical care for her pregnancy, giving birth in a

specific time and manner, and seeking time off from work, and other accommodations, due to pregnancy-related symptoms.

240.   In violation of New York Labor Law Ch. 31, Art. 7 § 203-E, the Defendants then retaliated against Ms. Marin for making decisions related to her reproductive health (including the above-referenced activities and decisions), including, but not limited to, subjecting Ms. Marin to a severe and pervasive hostile, harassing, discriminatory work environment including by subjecting Ms. Marin s to adverse actions, including, but not limited to, a severe and pervasive hostile, harassing, discriminatory work environment, denying Ms. Marin accommodations for her pregnancy and/or pregnancy-related condition; and/or the termination of Ms. Marin's employment.

241.   The Defendants' actions against Ms. Marin were in bad faith. The Defendants acted willfully and/or with reckless disregard for the state protected rights of Ms. Marin.

242.   As a direct and proximate result of the Defendant's violation of New York Labor Law Ch. 31, Art. 7 § 203-E., Ms. Marin has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

243.   Ms. Marin seeks all damages to which she is entitled, including, but not limited to, reinstatement, compensatory damages (including, but to limited to, emotional distress damages, reduced earning capacity, lost compensation and benefits, including back pay and front pay), liquidated damages, interest, attorney's fees, and costs.

WHEREFORE, the Plaintiff, Nasaria Marin, respectfully requests that this honorable court:

    A.  Schedule this matter for trial by jury;

    B.  Find the Defendants liable on all counts;

C. Award the Plaintiff her lost compensation and benefits (including, but not limited to, back pay and front pay),

D. Award the Plaintiff other monetary damages, including, but not limited to, damages for her diminished earning capacity and injury to reputation;

E. Award the Plaintiff emotional distress damages;

F. Award the Plaintiff compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

G. Award the Plaintiff liquidated damages;

H. Award the Plaintiff punitive damages;

I. Reinstate and restore Plaintiff to her position at her old seniority, responsibilities, benefits, and pay level;

J. Award the Plaintiff her reasonable attorneys' fees;

K. Award the Plaintiff interest and costs;

L. Award the Plaintiff all other damages to which she is entitled; and

M. Grant such further relief as is just and equitable.

Respectfully Submitted,

NASARIA MARIN

By her attorneys,

THE LAW OFFICES OF WYATT &
ASSOCIATES P.L.L.C

Date: 7/10/2026                    By:      */s/ Lillie Goldman*

Lillie Goldman
Lillie@wyattelgaservices.com
New York State Bar: 6158638

Benjamin J. Wyatt
BWyatt@Wyattlegalservices.com New
York State Bar: 5604590

Michael Varraso
MVarraso@wyattlegalservices.com
New York State Bar: 5619291

The Law Offices of Wyatt &
Associates,  P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1111
Facsimile: (603) 685-2868

New York Office:
69 State Street, 13th Floor
Albany, NY 12207